**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JOSEPH P. STEHLE, *et al.*,         :
                                 :

          Plaintiffs,       :     Case No. 3:19-cv-169
                                 :

         v.                :     Judge Thomas M. Rose
                                 :

VENTURE LOGISTICS, LLC, *et al.*,   :
                                 :

         Defendants.      :
                                 :

---

### ENTRY AND ORDER GRANTING, IN PART, DEFENDANT VENTURE LOGISTICS, LLC'S MOTION TO DISMISS COMPLAINT AND TRANSFER VENUE (DOC. 16) AND TRANSFERRING THE CASE TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA

---

Pending before the Court is the Motion to Dismiss Complaint and Transfer Venue (Doc. 16) (the "Motion"), filed by Defendant Venture Logistics, LLC ("Venture"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 28 U.S.C. §§ 1404(a) and 1406(a).[1] Plaintiffs filed a Response to the Motion (Doc. 22) (the "Response"), and Venture filed a Reply in support of the Motion (Doc. 27) (the "Reply"). The Motion is fully briefed and ripe for review.[2] (Docs. 16, 22, 27.) For the reasons discussed below, the Court **GRANTS, IN PART,** the Motion and **TRANSFERS** this case to the United States District Court for the Southern District of Indiana.

---

[1] In the Motion, Venture also moved to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), for insufficient process or insufficient service of process. However, Venture recognized that, subsequent to filing the Motion, it had been served, so it did not pursue those arguments in its Reply brief. (*See, e.g.,* Doc. 18; Doc. 27 at PAGEID # 130-31 ("Notably, until the present matter, Venture had never been served at its registered agent within the State of Ohio. … Plaintiffs themselves chose to initially serve [Venture] upon their [sic] Indiana principal place of business, and only upon filing of Venture's Motion to Dismiss did they proceed with service at its Columbus, Ohio registered agent") (*citing* Docs. 20 and 21).)

[2] Venture requested oral argument on the Motion "should it assist the Court in determining the same." (Doc. 16 at PAGEID # 40.) The Court denies the request.

## I.    <u>BACKGROUND</u>

This case arises from the tragic death of Joseph P. Stehle ("Stehle") that occurred following a traffic accident.  Venture is in the business of short haul regional trucking delivery services.  It serves customers in every state except Alaska and Hawaii.  Venture is an Indiana Limited Liability Company, formed in Indiana, with its principal place of business located at 1101 Harding Court, Indianapolis, Indiana.

As alleged in the Complaint, on or about June 9, 2018, Stehle was driving a vehicle eastbound on Interstate 70 approaching mile marker 110 in Wilkinson, Indiana (within Hancock County) when it was struck in the rear by a tractor trailer driven by defendant Sean P. Kelley ("Kelley"), one of Venture's truck drivers.  The tractor trailer drove up and on top of the vehicle driven by Stehle, allegedly crushing him and causing his death.  Plaintiffs allege that, at the time of the collision, the vehicle driven by Stehle was covered by a policy of insurance issued by defendant American Guarantee and Liability Insurance Company ("American Guarantee").

Plaintiffs allege that this Court has subject matter jurisdiction over this case on diversity grounds pursuant to 28 U.S.C. § 1332.  Plaintiffs allege that venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) and (d) and Fed. R. Civ. P. 4.  All of the Plaintiffs are alleged to be residents of Ohio.  The Complaint alleges that Kelley is a resident of Indiana.  It indicates an address in Illinois for American Guarantee.  As referenced above, Venture is an Indiana Limited Liability Company with its principal place of business in Indiana.  Venture has a registered agent in Ohio; it selected a nationwide company authorized by the Federal Motor Carriers Act to designate agents for service of process in all states in which it operates in order to ensure compliance with that Act.

Based on an affidavit submitted to the Court from Jeff Davis, Venture's Executive Vice

President, Venture conducts relatively limited business in Ohio. In 2018, Venture logged 6% of its total driven miles, nationwide, within the State of Ohio. That same year, 5.6% of its total business profits were derived from the State of Ohio. Venture does not operate any terminals within Ohio, does not have any offices located within Ohio, and only 20 of its approximately 900 total drivers are dedicated to serving Ohio customers. Venture's Ohio drivers make up 2.2% of its total fleet of drivers; Kelley is not one of Venture's Ohio drivers.

Mr. Davis testified in his affidavit that Kelley operated out of Venture's Indianapolis, Indiana terminal and that, upon information and belief, Kelly began his route in Brazil, Indiana on the day of the incident. A bill of lading indicates that, during the time of the incident, Kelley was transporting baled waste to a Kentucky customer. Again, the incident took place in Indiana while both Kelley and Stehle were driving eastbound (therefore toward Ohio) on Interstate 70. Kelley's driver's logs do not show that Kelley ever entered the State of Ohio on the date of the incident. Mr. Davis testified that, upon information and belief, Venture has never been served at its Ohio registered agent other than in the present lawsuit.

Plaintiffs filed the Complaint on June 7, 2019. (Doc. 1.) It contains ten causes of action, titled: Negligence; Negligence *Per Se*; Wrongful Death; Survivorship; Loss of Consortium; Negligent/Intentional Emotional Distress; Claim Against Defendant American Guarantee; Uninsured Motorists/Declaratory Judgment Against Defendant American Guarantee; Negligent Hiring/Entrustment/Supervision; and Punitive Damages. American Guarantee filed its Answer to the Complaint on August 8, 2019 (Doc. 11), and Kelley filed his Answer to the Complaint on October 29, 2019 (Doc. 24).

## II.    **ANALYSIS**

The briefing on the Motion raises three main issues.  <u>First</u>, whether Venture consented to personal jurisdiction in Ohio.  <u>Second</u>, if the Court determines that Venture has not consented to personal jurisdiction in Ohio, whether this Court otherwise has personal jurisdiction over Venture. <u>Third</u>, whether the claims against all or some of the defendants may and should be transferred to the United States District Court for the Southern District of Indiana.

### A.  **Personal Jurisdiction**

Venture moves to dismiss the Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure on the basis that this Court lacks personal jurisdiction over it.  *See* Fed. R. Civ. P. 12(b)(2).  Plaintiffs bear the burden of establishing, through specific facts, that personal jurisdiction exists over each defendant independently.  *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014); *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). However, the burden of proof that plaintiffs must bear to avoid dismissal depends on whether the court conducts an evidentiary hearing on the motion.  *Id.*  Here, based on the parties' submissions, the Court exercises its discretion not to conduct an evidentiary hearing.

If a district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without limited discovery or conducting an evidentiary hearing, then—instead of weighing any facts disputed by the parties—the court must consider the pleadings and submitted affidavits in a light most favorable to the nonmoving party, although the court also may consider the defendant's undisputed factual assertions.  *Id.*  Where a district court rules without an evidentiary hearing, then plaintiffs need only make a *prima facie* showing that personal jurisdiction over the defendant exists to defeat such a motion.[3]  *Id.*

---

[3] If an evidentiary hearing is held, then plaintiffs must establish personal jurisdiction exists by a preponderance of the evidence.  *Conn*, 667 F.3d at 711.  Whether the parties have conducted limited discovery on the personal

**(1) Inquiry concerning alleged consent to personal jurisdiction pursuant to 49 U.S.C. § 13304(a)**

A defendant may consent to the personal jurisdiction of a particular court, regardless of that court's ability to exercise personal jurisdiction over that defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court") (internal citation and quotation marks omitted). Merely as an example of how a party may consent to personal jurisdiction, "[t]he use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court." *Preferred Capital, Inc. v. Assocs. In Urology*, 453 F.3d 718, 721 (6th Cir. 2006).

In the Response, Plaintiffs argue that Venture consented to personal jurisdiction in this Court because it registered an agent for service in Ohio in accordance with 49 U.S.C. § 13304(a), a provision of the federal Motor Carrier Act. (Doc. 22 at PAGEID # 78.) The issue of whether designating an agent in a state, in accordance with 49 U.S.C. § 13304(a), implies consent to personal jurisdiction in that state is an issue that has divided courts. *See Western Express, Inc. v. Villanueva*, No. 3:17-cv-01006, 2017 U.S. Dist. LEXIS 176227, at *15-16 (M.D. Tenn. Oct. 24, 2014) (citing numerous cases and explaining how "[b]oth parties acknowledge that there are numerous cases holding that the designation of an agent for service of process *does* imply consent to personal jurisdiction" and that "there are numerous cases standing for the opposite premise as well.") (internal citations omitted) (emphasis in original).

The statute states the following:

(a) **Designation of agent.** A motor carrier or broker providing transportation subject to jurisdiction under chapter 135 [49 U.S.C. §§ 13501 *et seq.*] … shall

---

jurisdiction issue can also affect plaintiffs' burden. *See id.*

designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject matter jurisdiction may be served in an action brought against that carrier or broker. The designation shall be in writing and filed with the Department of Transportation and each State in which the carrier operates may require that an additional designation be filed with it. If a designation under this subsection is not made, service may be made on any agent of the carrier or broker within that State.

49 U.S.C. § 13304(a). "The phrase 'jurisdiction under chapter 135' generally refers to the jurisdiction of the Secretary of the Department of Transportation and the Surface Transportation Board … over the interstate transportation by motor carrier and the procurement of that transportation." *Hegemann v. M & M Am., Inc.*, No. 2:18-cv-00064, 2018 U.S. Dist. LEXIS 160683, at *13 (D. Vt. Sept. 20, 2018) (*citing Western Express*, 2017 U.S. Dist. LEXIS 176227, at *13 n.4 *and* 49 U.S.C. §§ 13102(1), (2)) (internal quotation marks omitted).

As an initial matter, Venture points out that the Complaint does not identify 49 U.S.C. § 13304(a) as a basis for personal jurisdiction over Venture. (*See* Doc. 1 at ¶¶ 1-3, 9.) Regardless, this Court finds that Venture has not consented to personal jurisdiction based solely on Plaintiffs' service of process on Venture' registered agent in Ohio designated pursuant to 49 U.S.C. § 13304(a).

In 1993, the Sixth Circuit held that "the mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (finding that the district court properly determined that Ohio did not have personal jurisdiction over a non-Ohio defendant corporation concerning an accident that took place in Nevada). In *Pittock*, the plaintiffs argued that the defendant "consented to personal jurisdiction by designating an agent to accept service of process in Ohio." *Id.* at 328. The statute at issue there was an Ohio state statute requiring a foreign corporation to designate an agent (upon whom process against the corporation may be served within the state) in order to be licensed to transact business

in the state. *Id.*, *citing* Ohio Revised Code ("O.R.C.") § 1703.041. Thus, the Sixth Circuit has held that a party's compliance with a service of process statute, by itself, does not equate with that party providing implied consent to personal jurisdiction. *Id.* at 328-29.

Based on the binding authority in *Pittock*, this Court finds that Venture has not consented to personal jurisdiction in this Court. *See also King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 572 (9th Cir. 2011) ("The constitutional standard of 'minimum contacts' has practical meaning in the context of personal jurisdiction. Mere appointment of an agent for service of process cannot serve as a talismanic coupon to bypass this principle."). Other district courts who have addressed this exact same issue have reached the same result. *E.g.*, *Western Express*, 2017 U.S. Dist LEXIS 176227, at *16 ("Based on its review of the above-referenced cases, the opinions upon which they rely, and controlling Sixth Circuit precedent, this court concludes that the mere designation of an agent for service of process in compliance with 49 U.S.C. § 13304 does not, standing alone, constitute consent to the general jurisdiction of the state in which such agent is appointed"); *Hegemann*, 2018 U.S. Dist. LEXIS 160683, at *16 ("Because Defendant's designation of a registered agent pursuant to the Motor Carrier Act [at 49 U.S.C. § 13304] does not constitute consent to be sued in Vermont, Plaintiff has not met his burden to demonstrate that general jurisdiction exists"); *Lyons v. Swift Transp. Co., Inc.*, No. 01-0209, 2001 U.S. Dist. LEXIS 15585, at *23 (E.D. La. Sept. 26, 2001) ("the Court rejects plaintiff's contention that Swift consented to personal jurisdiction in Louisiana for suits arising outside of Louisiana when it designated an agent for service of process pursuant to the Motor Carrier Act" under 49 U.S.C. § 13304).

Plaintiffs primarily rely on the opinion in *Grubb v. Day To Day Logistics, Inc.*, No. 2:14-CV-01587, 2015 U.S. Dist. LEXIS 86543 (S.D. Ohio July 2, 2015) to support their position. (*See* Doc. 22.) That district court case, in turn, relies primarily on three other cases: *Shapiro v.*

*Southeastern Greyhound Lines*, 155 F.2d 135 (6th Cir. 1946); *Scott v. Southeastern Greyhound Lines*, 5 F.R.D. 11 (N.D. Ohio 1945); and *Ocepek v. Corporate Transp., Inc.*, 950 F.2d 556 (8th Cir. 1991). *Grubb* is not binding on this Court and does not reference or take into account *Pittock*, which is binding.

In *Shapiro*, which was decided in 1946 (prior to *Pittock*), the Sixth Circuit addressed the following issue, which is different from the one presented here: whether the district court erred in "quashing service of summons on the ground that the venue of the cause of action is improperly laid in the district." 155 F.2d at 136. Also, although the Sixth Circuit in *Shapiro* stated that "[s]ervice upon an agent so designated in conformity with a valid state statute constitutes consent to be sued" (*id.*), that statement and the analysis to support it conflict with the holding in its subsequent decision in *Pittock*. *Id.* at 136-37 (relying on a principle from an earlier case that "a foreign corporation which has designated a local agent for the service of process in compliance with the statutory condition imposed upon its admission to do business in the state thereby surrenders as to suits in federal courts sitting in that state," i.e., a foreign corporation consents to, or waives its right to object to, personal jurisdiction in a state by designating a person to receive service of process in that state).

As shown in the parenthetical immediately above, *Shapiro* relied not on an analysis of the Motor Carrier Act or 49 U.S.C. § 13304(a) (or its predecessors), but on the interpretation in an earlier case (which likewise addressed venue and has since been criticized) of a state statute that required a foreign corporation to designate an agent upon whom process against the corporation may be served within the state in order to be licensed to transact business in the state—just like the state statute at issue in *Pittock*. *Shapiro*, 155 F.2d at 136 (*citing Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939)). The plaintiff in *Shapiro* had argued that, because that

earlier case concerned a state statute, it should not be controlling when analyzing (the predecessor to) 49 U.S.C. § 13304. *Id.* However, the Sixth Circuit in *Shapiro* found that there was no essential difference between the requirements of the two statutes, so it could rely on a case interpreting a state license-to-transact-business statute when analyzing (the predecessor to) 49 U.S.C. § 13304. *Id.* ("The fact that the consent was given under a valid federal statute rather than under a state statute does not detract from the force and legal effect of that consent").

Using that same logic from *Shapiro* but in reverse, this Court does not believe that the fact *Pittock* involved a state license-to-transact-business statute, and not 49 U.S.C. § 13304, makes *Pittock* non-binding on this issue. *Accord: Lyons*, 2001 U.S. Dist. LEXIS 15585, at *22 ("[t]he Court is not persuaded that the Fifth Circuit would depart from [its holding in] *Wenche Siemer* based on the distinction between designating an agent for service of process under the Motor Carrier Act [at 49 U.S.C. § 13304] and designating one under a state statute"). This Court joins one of its sister district courts within the Sixth Circuit in believing that *Shapiro* no longer provides the Sixth Circuit's stance on the issue, contrary to *Grubb*—which, again, never mentioned *Pittock*. *Western Express*, 2017 U.S. Dist. LEXIS 176227, at *16, 21-22 (addressing *Shapiro* and *Grubb*, and finding "that the plaintiff's reliance on *Shapiro*, which rests on *Neirbo*, is misplaced" because "[u]nder *Pittock*, it is clear that [defendant trucking company's] designation of an agent for service of process, standing alone, does not constitute consent to the general jurisdiction of this state").

Plaintiffs' reliance on *Scott* and *Ocepek* is likewise unpersuasive. Both of those cases pre-date *Pittock* and are not binding on this Court. Additionally, as the court in *Lyons* pointed out, "*Ocepek* relied heavily on the rationale of the Eighth Circuit's earlier decision in *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990) … [in which] the Eighth Circuit held that a [foreign] corporation consented to suit on out-of-state torts by virtue of having designated an agent

under a state statute." *Lyons*, 2001 U.S. Dist. LEXIS 15585, at *23. However, as explained above, the Sixth Circuit held otherwise in *Pittock*. Thus, as was the case in both *Hegemann* and *Lyons* (from district courts within the Second and Fifth Appellate Circuits, respectively), this Court is bound by the Sixth Circuit's decision in *Pittock* and, therefore, declines to adopt the holding in *Ocepek*. *Pittock*, 8 F.3d at 329 ("the mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction"); *Hegemann*, 2018 U.S. Dist. LEXIS 160683, at *16 (declining to follow *Ocepek*, finding that it was "bound by the Second Circuit's decision in *Brown* [*v. Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016)], which held that the 'mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction' does not constitute consent to personal jurisdiction"); *Lyons*, 2001 U.S. Dist. LEXIS 15585, at *22 (declining to following *Ocepek*, finding that it was bound by a decision from the Fifth Circuit Court of Appeals that relied on *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) and "rejected the contentions that non-resident defendants either automatically consented to suit or waived their right to due process by designating an agent for process").[4]

Therefore, the Court finds that Venture has not consented to personal jurisdiction in this Court for this case by registering an agent for service in Ohio in accordance with 49 U.S.C. § 13304(a).

### (2) <u>Inquiry concerning alleged personal jurisdiction under Ohio's long-arm statute and federal Due Process Clause</u>

The Court turns to the next inquiry: whether this Court may exercise personal jurisdiction over Venture without its consent. As noted above, Venture recognizes that it has been served

---

[4] The Court also notes that *Ocepek* relies upon *Shapiro* to support its holding.

through its registered agent within the State of Ohio.  However, this does not end the inquiry.[5]  "A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution."  *Conn*, 667 F.3d at 711.  Thus, the Court will not conclude that it has personal jurisdiction over Venture unless Plaintiffs have made a *prima facie* showing that: "(1) jurisdiction is proper under a long-arm statute or other jurisdictional rule of Ohio, the forum state; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case."  *Conn*, 667 F.3d at 711.  "Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa."  *Id.* at 711-12.

The Court will analyze the Due Process requirement first.[6]  "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state."  *Conn*, 667 F.3d at 712-13.  Although it does not appear that Plaintiffs argue the applicability of specific jurisdiction here, the Court will consider both general and specific in an abundance of caution.

Regarding specific jurisdiction, the Supreme Court has explained that, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum

---

[5] *See* Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or (C) when authorized by a federal statute.").

[6] "Unlike other jurisdictions, Ohio does not have a long-arm statute that reaches to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law."  *Conn*, 667 F.3d at 712.  "Ohio's long-arm statute [O.R.C. § 2307.382] grants Ohio courts personal jurisdiction over a non-resident if his conduct falls within the nine bases for jurisdiction listed by the statute."  *Id.*

and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017) (internal quotation marks omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Thus, "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough." *Id.*

Regarding general jurisdiction, the Supreme Court has explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558, 198 L. Ed. 2d 36 (2017) (*quoting Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) *and Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Supreme Court in *Daimler* and *BNSF* clarified that the paradigm forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its place of business. *Id.* Those two "bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Daimler*, 571 U.S. at 137.

However, "[t]he exercise of general jurisdiction is not limited to" those two paradigm forums. *BNSF*, 137 S. Ct. at 1558. "[I]n an 'exceptional case' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (*quoting Daimler*, 571 U.S. at 139 n. 19). The Supreme Court "suggested that *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S. Ct. 413, 96 L. Ed. 485, 63 Ohio Law Abs. 146 (1952), exemplified such a case." *Id.* "In *Perkins*, war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio." *Id.*

"Because Ohio then became 'the center of the corporation's wartime activities,' suit was proper there." *Id.* (*quoting Daimler*, 571 U.S. at 130) (internal citation omitted).

Here, the incident did not take place in Ohio and Venture is not "at home" in Ohio. *Daimler*, 571 U.S. at 137-140; *BNSF*, 137 S. Ct. at 1554 ("the Fourteenth Amendment's Due Process Clause does not permit a State to hale an out-of-state corporation before its courts when the corporation is not 'at home' in the State and the episode-in-suit occurred elsewhere"). Despite Venture logging approximately 6% of its driven miles in Ohio, deriving approximately 6% of its business profits from Ohio, and having a number of its drivers be dedicated to serving Ohio customers, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *BNSF*, 137 S. Ct. at 1559 (*quoting Daimler*, 571 U.S. at 139). "Rather, the inquiry calls for an appraisal of a corporation's activities in their entirety; a corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* (internal quotation marks omitted).

Plaintiffs argue that this case qualifies as an "exceptional case" identified in *BNSF* and *Daimler*, such that Venture should be subject to general jurisdiction in Ohio despite not being incorporated, or having its principal place of business, in Ohio. (Doc. 22 at PAGEID # 82.) However, Plaintiffs fail to cite any caselaw that would demonstrate that this case is one of those rare exceptions. It certainly is not similar to the factual scenario in *Perkins*, the one case identified in *BNSF* and *Daimler* as being an "exceptional case." And, the facts presented here do not demonstrate that Venture's operations in Ohio are "so substantial and of such a nature as to render" Venture "at home" in Ohio. *BNSF*, 137 S. Ct. at 1558.

Instead, as in *BNSF*, while business that Venture does in Ohio may be sufficient to subject it to specific personal jurisdiction in Ohio on claims that are actually related to the business it does

in Ohio, its in-state business does not suffice to permit the assertion of general jurisdiction over claims like the Plaintiffs' claims here that simply are unrelated to its activity in Ohio. *BNSF*, 137 S. Ct. at 1559. The Due Process Clause does not permit this Court to exercise personal jurisdiction over Venture in this instance.[7] Plaintiffs have not met their burden of making a *prima facie* showing that personal jurisdiction over Venture exists in this Court for this case.

### B. <u>Venue and Transfer</u>

In their Response, Plaintiffs ask that, "[i]n the event that the Court determines that venue is not proper in this district, or that personal jurisdiction over Defendants is wanting, or that the principles of *forum non conveniens* codified in Section 1404 apply, … the Court, in the interest of justice, transfer this case to the Southern District of Indiana, rather than dismiss the case and require it to be refiled." (Doc. 22 at PAGEID # 87.) Therefore, this Court will determine whether the claims against Venture should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction,[8] or whether those claims (or the entire case) should be transferred.[9]

The analysis is a two-step process: (1) whether the proposed transferee court would have proper jurisdiction over the controversy and the parties and would be a proper venue, and (2) whether transfer would be appropriate under one of the transfer statutes. *Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016); *Jamhour v. Scottsdale Ins.*

---

[7] As indicated above, given this finding that "jurisdiction is not proper under the Due Process Clause," the Court does not need to address whether "jurisdiction is proper under a long-arm statute or other jurisdictional rule of Ohio." *Conn*, 667 F.3d at 711-12.

[8] Venture also moved to dismiss the Complaint under Rule 12(b)(3) of the Federal Rules of Civil Procedure on the basis that this Court is an improper venue for the matter. *See* FED. R. CIV. P. 12(b)(3). The Court need not analyze that additional argument by Venture.

[9] Regardless of whether Plaintiffs expressly asked this Court to transfer the case (or a portion of it) pursuant to 28 U.S.C. §§ 1404, 1406, and 1631, the Court reads the Response that way given the Court's decision concerning its lack of personal jurisdiction over Venture. At the least, this Court has the power to transfer a case (or a portion of it) *sua sponte*—particularly where Plaintiffs have indicated that they are amenable to a transfer to the U.S. District Court for the Southern District of Indiana. *Cosmichrome, Inc. v. Spectra Chrome, LLC*, 504 F. App'x 468, 472 (6th Cir. 2012) ("a district court has the power to sua sponte transfer a case"). The Court also notes that, in its Motion, Venture made an alternative argument that this case be transferred to the U.S. District Court for the Southern District of Indiana pursuant to Section 1404(a) and *forum non conveniens*. (Doc. 16-1 at PAGEID # 56-58.)

*Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002).

### (1) Principles for determining whether to transfer

Regarding the first step of the analysis, "a court may transfer venue only to another district where the case could have been brought." *Means*, 836 F.3d at 649, 651 (finding district court erred in transferring portion of the case against a party where transferee court did not have personal jurisdiction over that party). A case could have been brought in a transferee court if three conditions are met: (1) that court would have jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court. *Jamhour*, 211 F. Supp. 2d at 945; *see also* FED. R. CIV. P. 4(k)(1).

Regarding the second step of the analysis, a court's authority to transfer venue lies in multiple statutes, including 28 U.S.C. §§ 1404, 1406, and 1631. Those statutes state, in pertinent part, the following:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

> Whenever a civil action is filed in a court as defined in section 610 of this title [28 U.S.C. § 610] … and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action … to any other such court … in which the action … could have been brought at the time it was filed … , and the action … shall proceed as if it had been filed in … the court to which it is transferred on the date upon which it was actually filed in … the court from which it is transferred.

28 USC § 1631.

A court can use a combination of these statutes to transfer claims, which may be useful to allow all parties to completely resolve their dispute in one forum. *See, e.g., Veteran Payment Sys., LLC v. Gossage*, No. 5:14CV981, 2015 U.S. Dist. LEXIS 16261, at \*20, 25 (N.D. Ohio Feb. 10, 2015) (transferring claims against one defendant pursuant to Section 1404 and claims against another defendant pursuant to Section 1406, and stating that Section 1631 also supports transfer of the claims). The decision of whether to transfer is within the Court's discretion. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998) ("[t]he decision of whether to dismiss or transfer is within the district court's sound discretion"); *Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 483-84 (6th Cir. 2009) (Sections 1406(a) and 1631 "confer broad discretion in ruling on a motion to transfer"); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) (Section 1404(a) accords broad discretion to a district court). This Court recognizes, however, that it would be "an abuse of discretion for a district court to refuse to transfer without determining whether transfer would be in the interest of justice." *Jackson*, 421 F. App'x at 484. All three of the transfer statutes use the "in the interest of justice" language.

Section 1404 does not permit transfer when a court lacks jurisdiction over the defendant. *Pittock*, 8 F.3d at 329; *Jackson*, 421 F. App'x at 483 (the purpose of Section 1404 is "to transfer actions brought in a permissible yet inconvenient forum"). Therefore, based on the analysis above, Section 1404 does not permit this Court to transfer the claims against Venture.

When determining whether to transfer a case under Section 1404(a), a court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). The court weighs the relevant factors and decides "whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Id.* at 62-63 (internal

quotation marks omitted). "Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 62 n. 6 (internal quotation marks omitted). "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (internal quotation marks omitted). "The Court must also give some weight to the plaintiffs' choice of forum." *Id.* As an overarching principle, Section 1404(a) is intended to place discretion in the district court to determine whether to transfer "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart*, 487 U.S. at 29.

Section 1406 allows a court to transfer regardless of whether the court has jurisdiction over the defendant. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (the general purpose of Section 1406 is "removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits" and its language "is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not"). However, by its terms, Section 1406 only applies to cases "laying venue in the wrong division or district." 28 U.S.C. § 1406(a). Therefore, Section 1404, not Section 1406, is a more appropriate avenue for analyzing whether claims against Kelley and American Guarantee can and should be transferred, given that American Guarantee has never raised a venue defense and Kelley has only done so within a litany of defenses "in the alternative" that he lists in his Answer. (Doc.

24 at PAGEID # 107.)

Similar to Section 1406, Section 1631 applies "when the court finds that there is a want of jurisdiction." *Jackson*, 421 F. App'x at 483 (internal quotation marks omitted). In the Sixth Circuit, Section 1631 authorizes transfers in the event that the court lacks subject matter jurisdiction or personal jurisdiction. *Id.* at n. 1. "A court may decide to dismiss an action rather than transferring it under § 1631 either because (1) no permissible federal court would have jurisdiction over the action, or because (2) transfer would not be in the interest of justice." *Id.* at 483.

Specific guidance concerning whether a case should be transferred "in the interest of justice" under Sections 1406 and 1631 is more limited than guidance for Section 1404. However, one guiding principle is the purpose of such transfer statutes, as stated by the Supreme Court: "removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr*, 369 U.S. at 466-67. *See also Flynn v. Greg Anthony Constr. Co., Inc.*, 95 F. App'x 726, 741 (6th Cir. 2003) (citing *Goldlawr* for premise that the "ultimate goal" is "allowing cases to be decided on their substantive merits, as opposed to being decided on procedural grounds"). Additionally, courts take into account a variety of considerations, for example including, but not limited to: avoiding piecemeal litigation and advancing the parties' interests in completely resolving their dispute, the location of relevant activities and operative facts, the location of relevant contacts (witnesses and evidence), the prejudice to each party in the case of a dismissal or transfer, and whether the decision to initiate the action in the original district was unjustified. *See Flynn*, 95 F. App'x at 741; *Wallace v. Whitt*, Nos. 90-6051, 90-6052, 1991 U.S. App. LEXIS 13084, at *3-4 (6th Cir. June 17, 1991); *Shook, Inc. v. City of Moundsville Water Bd.*, No. 3:09cv00210, 2010 U.S. Dist LEXIS 18499, at *23-24

(S.D. Ohio Feb. 12, 2010), *adopted by* 2010 U.S. Dist. LEXIS 19109; *Action Freight Servs., LLC v. Thorne*, No. 07-12553, 2007 U.S. Dist. LEXIS 52207, at *18 (E.D. Mich. June 22, 2007); *Bertazzon Am., LLC v. McDonagh*, No. 3:12-cv-1331, 2013 U.S. Dist. LEXIS 162409, at *20 (M.D. Tenn. Nov. 14, 2013).

### (2) <u>Application of transfer principles to this case</u>

The Court turns now to applying the two-step process identified above.  Regarding the first step (whether the proposed transferee court has proper jurisdiction over the controversy and the parties and is a proper venue), subject matter jurisdiction over this action in the Southern District of Indiana would be based on the same diversity grounds as in this Court.  28 U.S.C. § 1332(a)(1).  Concerning venue, 28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  As referenced above, the incident occurred in Hancock County, Indiana, which is within the Southern District of Indiana – Indianapolis Division. *Bramlet*, 141 F.3d at 264 ("[u]nder § 1391(a)(2), we reiterate that the appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred").  Finally, concerning personal jurisdiction and whether the parties would be subject to process in Indiana, the U.S. District Court for the Southern District of Indiana presumably would have personal jurisdiction over Venture (an Indiana LLC with its principal place of business in Indiana) and Kelley (a resident of Indiana).  Regarding American Guarantee, pursuant to the Court's December 23, 2019 Notation Order, American Guarantee informed this Court that it would be subject to personal jurisdiction in the U.S. District Court for the Southern District of Indiana for purposes of this particular matter.  (Doc. 28.)  Therefore, it appears that Plaintiffs could have brought their claims against all of the parties in that court. *Jamhour*, 211 F. Supp. 2d at 945.

Regarding the second step (whether transfer is appropriate under one of the transfer

statutes), as noted above, the Court has broad discretion in determining whether to transfer. Regarding the claims against Venture, the Court finds that it would be in the interest of justice to transfer those claims to the United States District Court for the Southern District of Indiana pursuant to Section 1406 (or Section 1631). Indiana is the location of the incident and where relevant witnesses and evidence would be located. Transferring, instead of dismissing Venture as a party and requiring Plaintiffs to refile an action against Venture in another court, results in a more expeditious and orderly adjudication of the claims. *Goldlawr*, 369 U.S. at 466-67. Regarding the claims against Kelley and American Guarantee, transferring those claims to the same court would advance the parties' interests in completely resolving their dispute in a single case—given that the claims against Venture cannot remain here, as shown in the above analysis. Weighing relevant factors set forth above, the Court finds that, on balance, transferring those claims to the U.S. District Court for the Southern District of Indiana as well (pursuant to Section 1404) would serve the convenience of the parties and witnesses and otherwise promote the interest of justice. *Atl. Marin Constr. Co.*, 571 U.S. at 62-63.

Therefore, pursuant to Sections 1406 (or Section 1631) with respect to claims against Venture and pursuant to Section 1404 with respect to claims against Kelley and American Guarantee, this Court finds that it is in the interest of justice to transfer this action to the United States District Court for the Southern District of Indiana.

## III. <u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS IN PART** Defendant, Venture Logistics, LLC's, Motion to Dismiss Complaint and Transfer Venue (Doc. 16) and **TRANSFERS** this case to the United States District Court for the Southern District of Indiana.[10]

---

[10] Given this outcome, the Court does not address Venture's reservation of rights to seek relief under Rule 12(b)(6) or request for leave to file an Answer within 14 days pursuant to Rule 12(a)(4)(A). (*See* Doc. 16 at PAGEID # 40.)

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, January 10, 2020.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE